FILED
2017 May-25 PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PAMELA GOODMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: |
| ) | |
| HONEYWELL INTERNATIONAL, INC., ) | JURY TRIAL REQUESTED |
| d/b/a HONEYWELL AEROSPACE, ) | |
| THERESA HAMMOND, ) | |
| STEVEN WHITE, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Pamela Goodman (hereinafter "Goodman"), and for her complaint against the Defendants, Honeywell International, Inc., which does business in this District as Honeywell Aerospace (hereinafter "Honeywell"), Theresa Hammond, and Steven White, states as follows:

Goodman seeks payment for unpaid wages, liquidated damages, declaratory judgment, equitable relief and money damages, attorney's fees and costs instituted to secure the protection of and to redress the deprivation of rights secured by the following federal statutes:

1

1. The Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* (hereinafter the "Fair Labor Standards Act" or "FLSA"); and

2. The Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) (hereinafter the "Equal Pay Act" or "EPA").

## JURISDICTION & VENUE

3. Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b) of the Fair Labor Standards Act, by 29 U.S.C. § 206(d) of the Equal Pay Act of 1963, as amended; by 28 U.S.C. § 1331, this action arising under the laws of the United States; by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce; and 28 U.S.C. §§ 2201 and 2202, providing for further relief.

4. Personal jurisdiction is proper in this District because Honeywell's divisional factory is physically located and managed within the District. Honeywell therefore purposefully maintains continuous and extensive contact with this District and avails itself of the laws and privileges arising from carrying on business operations in this District.

5. Venue in the Northern District of Alabama, Eastern Division, is proper pursuant to 28 U.S.C. § 1391(b), as the action is brought within the judicial District where a substantial part of the unlawful employment practices were committed.

## PARTIES & STATUTORY QUALIFICATIONS

**A.     Plaintiff: Pamela Goodman**

6.     Pamela Goodman (hereinafter 'Goodman'), is a person over the age of nineteen (19) years, a resident of the State of Alabama, a present resident of Calhoun County, and a current employee of Honeywell.

7.     During all times relevant to this Complaint, Goodman has been a full-time Honeywell employee and was subject to the full protection of the FLSA and the EPA.

8.     Goodman's employer-employee relationship with Honeywell does not exempt her from the coverage of the FLSA or its EPA amendment under 29 U.S.C. § 213.

**B.     Defendants: Honeywell, Theresa Hammond, and Steven White**

9.     Honeywell International, Inc. (hereinafter, "Honeywell"), is a foreign corporation, incorporated in Delaware, based in New Jersey, and registered to do business in Alabama.

10.    Honeywell maintains a registered address with CSC-Lawyers Incorporating Service, Incorporated, at 150 South Perry Street, Montgomery, Alabama 36104.

11. Honeywell currently operates a 'Honeywell Aerospace' manufacturing and aircraft overhaul plant within in this District, located in Calhoun County, Alabama.

12. Honeywell Aerospace is a division of Honeywell International, one of three 'strategic business groups'.

13. Honeywell Aerospace is neither a legal subsidiary of Honeywell nor other legally distinct business entity.

14. Theresa Hammond and Steven White are individuals who served as managerial agents for Honeywell, direct supervisors over Goodman, and decision-makers with respect to her wage increases, during certain years relevant to this Complaint. Hereinafter, the term 'Honeywell' will also refer to Hammond and White collectively in their capacity as agents for the company.

15. Honeywell is a covered 'employer' for the purposes of the FLSA and EPA, under 29 U.S.C. § 203(d), in that:

   a. Honeywell acts directly in the interest of an employer in relation to Goodman by employing Goodman to labor for its benefit in this District at aforesaid manufacturing plant.

   b. Honeywell is a business enterprise engaged in or affecting interstate commerce for the purposes of the FLSA and EPA, § 203(s)(1)(A); specifically:

   (i) Honeywell has employees handling, selling, and/or otherwise working on goods and materials that have been moved in or produced for commerce by any person.

   (ii) Honeywell engages in the business of operating a manufacturing and aircraft overhaul plant in Calhoun County.

   (iii) On information and belief, Honeywell has a gross volume of sales made or business done of not less than Five Hundred Thousand Dollars ($500,000.00) per year,

  c. Honeywell is not exempt from the FLSA under 29 U.S.C. § 213.

16. Honeywell's discriminatory acts were authorized, ordered, or done by Honeywell's officers, agents, employees, or representatives while they were actively engaged in the management of Honeywell's business.

## ADMINISTRATIVE PREREQUISITES

17. The EPA, under the FLSA, does not require administrative exhaustion.

## FACTUAL ALLEGATIONS

18. Honeywell's Calhoun County-based plant is an aircraft repair and overhaul facility. The facility's mechanics break down private aircraft into serviceable parts and perform all necessary maintenance and component replacement.

5

19. Goodman was hired by Honeywell on March 17, 2005, and has been continuously employed at the Honeywell Aerospace plant up to the present day.

20. At the time of her hiring, Goodman performed the job of Level I Mechanic at a starting rate of approximately $10.00 per hour.

21. The Mechanic job is divided into levels I, II, and III, each requiring successively more skill, effort, and responsibility. None of the three are further subdivided in any relevant way.

22. There are multiple Mechanic teams at Honeywell's plant, each including approximately four to five Level I Mechanics.

23. During the relevant period, Honeywell employed approximately six to seven other female Mechanics working at the plant.

24. Upon being hired at Honeywell's plant, Goodman received standard training for the position of Level I Mechanic as follows:

    a. Honeywell placed Goodman under the tutelage of a Mechanic III, the highest level of Mechanic at the plant with the most responsibility, experience, and skill.

    b. Certain Mechanic IIIs are designated trainers and stay with the prospective Level I Mechanics for several weeks.

  c. During this period, each new Mechanic must complete multiple 'units', demonstrating various job-related proficiencies before being certified as a Mechanic I.

25. Goodman also receives continuing occupational training in the form of yearly Federal Aviation Administration (FAA) regulation and procedural updates, which Honeywell hosts and runs.

26. Among other tasks, Mechanics of all levels are practiced in the repair and building of valves meant for use on an aircraft as well as applying safety wiring, also known as 'locking-wire'.

27. Honeywell maintained and maintains no official or *de facto* subclass(es) of Level I Mechanics at the plant with any special or unique responsibilities.

28. The Level I Mechanic position within Honeywell Aerospace plant is performed by all Level I Mechanic employees under similar working conditions, and requires a substantially equal level of skill, effort, and responsibility.

29. These responsibilities among Level I Mechanics become consistent immediately after training and orientation.

30. Goodman's period of working as a Level I Mechanic alongside male Level I Mechanics under the same conditions has persisted throughout most of her

employment, but most relevantly has persisted during the entirety of the three years preceding this Complaint.

31. All Level I Mechanics at this facility, both men and women, work in the same regulated environment at the plant, each with a personal work desk, where they may opt to sit or stand.

32. On information and belief, at the time of Honeywell's most recent discriminatory act, Goodman worked between approximately fifty-six (56) and fifty-eight (58) hours per week, a number greater than or equal to other similarly-situated male Level I Mechanics.

33. Though Level I Mechanics are paid hourly, their wage increases are based on a percentage of their estimated yearly earnings.

34. Honeywell's Mechanic employees are subject to periodic performance evaluations each March and may receive wage increases following said evaluations.

35. Each years of her employment with Honeywell, Goodman was eligible to be considered for percentage-based wage increases.

36. During each yearly evaluation, Goodman's supervisor broke Goodman's performance down into multiple categorical blocks, including 'quality', 'discipline', and 'production', and orally ranked Goodman in each on a numerical scale.

37. Honeywell never gave Goodman an overall average score, and, on information and belief, no such scoring system exists.

38. Following examination of all performance blocks, Honeywell would inform Goodman of what percent wage increase she was to receive, if any.

39. Upon leaving each performance review, Honeywell furnished Goodman with a copy of her percentage increase, if any, but did not include a copy of her block by block performance metrics.

40. Upon information and belief, Honeywell has used no established algorithm, protocol, or other function-based procedure to strictly connect performance metrics to a particular percent change in Goodman's wages.

41. The Honeywell employee handbook and associated guides available to Goodman make no written mention of how, or if, pay increases for Level I Mechanics are actually extrapolated from performance review metrics.

42. During her past years of employment with Honeywell, Goodman has performed at what her supervisors have represented to be an average or above average level in each block.

43. Goodman received her objectively-highest review to date in March 2014 for the 2013 year.

44. She later received similarly high reviews for her 2014 and 2015 reviews, conducted in 2015, and 2016 respectively.

45. During the first three years of Goodman's employment, Honeywell alleged that Goodman's small wage increase was due to her working only in safety wiring, though Theresa Hammond made the decision to keep her solely on safety wiring. The minimal wage increases continued after this period.

46. All Honeywell Level I Mechanics are required to perform safety wiring as part of their job.

47. During these three years, Goodman possessed substantially equal training and skill to other similarly-situated Level I Mechanics of the opposite sex, but Honeywell repeatedly returned her to solely safety wiring, rather than allowing her to perform a broader range Level I Mechanic tasks.

48. Following the first three years, Honeywell permitted Goodman to perform the full spectrum of Level I Mechanic tasks which continues to this day, further making her job substantially identical to that of all male Level I Mechanics.

49. On information and belief, Goodman's pay increases, if extant for a particular year, have generally ranged between .5% and 1.5%.

50. For example, in 2008, Goodman received a 1.49% merit increase for the same year, effective in March of 2009.

51. Goodman's wage increases, between hiring and the present day, have been inconsistent and fail to logically correlate with the metrics of her performance evaluations.

52. Goodman's wage increases have also been less-frequently awarded than those for similarly-situated Level I Mechanics of the opposite sex with the same or lower performance reviews.

53. During those years that Honeywell has granted Goodman a wage increase, the raise was smaller than those for similarly-situated Level I Mechanics of the opposite sex with the same or lower performance reviews.

54. On information and belief, Honeywell routinely awards similarly-situated Level I Mechanics of the opposite sex wage increases ranging from 6% to as high as 10%.

55. The highest percentage increase Goodman received prior to this Complaint was a 4%. This amount, which she received until March 2015, when she received another smaller increase, still fell far below that of similarly-situated male employees.

56. During her 2015, 2016, and 2017 evaluations, Goodman has continued to receive compensation increases inferior to that of similarly-situated male employees while continuing to be scored each March at a performance block level equal or superior to such employees.

57. On at least one occasion, Goodman has witnessed a Level I Mechanic with, upon information and belief, substantially poorer performance across his

block categories, leaving a review actually bragging of a higher wage increase than her own.

58. Therefore, between her hiring and the present, Honeywell has subjected Goodman to different terms and conditions of employment than her similarly-situated co-workers of the opposite sex. This occurs annually each March, and monthly with each new paycheck.

59. An EEOC analysis, completed in April 2016, of the pay increases given to all plant Level I Mechanics in March 2014, as compared to each employee's evaluation, notes that Honeywell fails to show any consistent correlation between each employee's actual job performance and his or her percent pay increase.

60. Goodman believes and expects the discovery process to assist her in gathering evidence which shows that Defendants' wages provided did not compensate her in the manner required by the FLSA, as amended under the EPA.

61. Defendants have a duty under 29 U.S.C. § 211(c) to keep certain records relating to the hours Goodman worked and the pay Goodman received; Goodman will rely upon these records, assuming they are correct, as part of her case.

## COUNT ONE
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
## AS AMENDED UNDER THE EQUAL PAY ACT
### (Prohibition of Sex Discrimination – 29 U.S.C. § 206(d))

62. Goodman re-alleges each and every allegation contained in this Complaint as though fully set forth herein.

63. Based on these allegations, Defendants paid Goodman at a rate less than the rate at which Honeywell paid employees of the opposite sex at the same establishment for substantially equal work performed under similar working conditions.

64. This violation has occurred both at each and every performance review and continues with each and every check.

65. Such discriminatory compensation was not made pursuant to a 29 U.S.C. § 206(d) seniority system, a merit system, a system which measured earnings by quantity or quality of production, or a differential based on any other factor other than sex.

66. Defendants' failure to compensate Goodman correctly was willful and without good faith as defined in 29 U.S.C. § 260.

67. The Defendants, by such failures, have willfully violated the FLSA, 29 U.S.C. § 206.

68. Honeywell, as a multinational corporation, ranking member of Fortune 500, and possessor of a highly-developed human resources division, is intimately familiar with the applicable provisions of the FLSA, and its acts were therefore

willful and were the result of a conscious business decision made by Defendants to generate greater profit at the expense of certain employees.

69. Alternatively, Defendants possessed mixed motives for its disparate compensation of Goodman, but would not have made the same employment decision with respect to compensation if it lacked an illegally discriminatory motive.

WHEREFORE, Goodman requests this Court to enter judgment in favor of Goodman, and against Defendants for:

A. All compensation, including any non-wage benefits, that Goodman should have received under the Fair Labor Standards Act, as amended under the EPA, but for Defendants' violation of her rights;

B. An equal amount in liquidated damages pursuant to the FLSA. 29 U.S.C. § 216(b);

C. All reasonable costs of litigation, including attorney fees, pursuant to the FLSA. 29 U.S.C. § 216(b);

D. Further compensatory damages for emotional distress;

E. An order directing Defendants to award Goodman a percent wage increase equal to that of her similarly-situated coworkers of the opposite sex;

F. Attorney's fees and the reasonable costs of litigating this action;

G. A judicial determination that the Defendants violated the Fair Labor Standards Act, as amended under the Equal Pay Act; and

H. Any other relief this Honorable Court finds to be due and proper under the circumstances.

**GOODMAN REQUESTS A TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

*/s/ Alyssa L. Enzor*
Alyssa L. Enzor
ASB-1862-A17I
Attorney for Plaintiff

*/s/ Nathaniel C. Abell*
Nathaniel C. Abell
ASB-2137-L84L
Attorney for Plaintiff

**OF COUNSEL:**
Enzor & Maniscalco, LLP
506 Front Street
Oxford, Alabama 36203
Tel: (256) 770-7232
Fax: (256) 770-7234
Email: nathan@enzormaniscalco.com

**SERVICE TO BE PERFECTED BY CERTIFIED MAIL PENDING REQUEST/ISSUANCE OF STAMPED COMPLAINTS FROM CLERK**